## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## AT EAST ST. LOUIS

| | | |
|---|---|---|
| **ASHLAND INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** _____ |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **SPECIALTY LUBE INC.,** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **RICK J. MILLER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Ashland Inc., by its attorneys and for its Complaint, alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for trademark infringement, trade dress infringement, unfair competition, and trademark dilution and counterfeiting under the Lanham Act (15 U.S.C. §§ 1114, 1116, 1117, 1125(a) and (c)); trademark infringement, unfair competition and unjust enrichment under Illinois common law; trademark dilution under Illinois common law and the Illinois Anti-Dilution Act (765 ILCS 1036/1); and unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS §505).

### THE PARTIES

2.      Plaintiff Ashland Inc. is a Kentucky corporation with its principal place of business at 50 E. Rivercenter Boulevard, Covington, Kentucky 41012 (hereinafter "Ashland") and doing business within this district.

3.     On information and belief, Defendant Specialty Lube Inc. (hereinafter "Specialty Lube") is an Illinois corporation having its principal place of business at 801 West McCord Street, Centralia, Illinois 62801-5357, and operating an instant oil change facility where oil changes and related services are offered to the public.

4.     On information and belief, Defendant Rick J. Miller (hereinafter "Rick Miller") is an owner and officer of Specialty Lube and directly controls Specialty Lube. Defendant Rick Miller has failed to take appropriate action to prevent the use of counterfeit Valvoline® oil and has knowingly participated in the counterfeiting alleged herein. As used herein, "Defendants," unless otherwise stated, refers to both defendants Rick Miller and Specialty Lube.

## JURISDICTION AND VENUE

5.     This action arises under the trademark laws of the United States, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under the statutory and common laws of the State of Illinois.

6.     Federal question jurisdiction is conferred pursuant to 28 U.S.C. § 1331 and 1338(a), and 15 U.S.C. § 1121(a). Subject matter jurisdiction over the claims brought under state statutory and common law is conferred pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

7.     Venue in this court is based upon 28 U.S.C. §1391(b) and (c).

## THE WORLD FAMOUS VALVOLINE BRAND AND PRODUCTS

8.     Ashland Inc. (NYSE:ASH), a FORTUNE 500 diversified chemical company, provides innovative products, services and solutions to customers around the globe. Ashland has sales and operations in the United States and in more than 100 countries worldwide. Ashland's operations include four divisions: Ashland Aqualon Functional Ingredients, Ashland Hercules Water Technologies, Ashland Performance Materials, and Ashland Consumer Markets (a/k/a Valvoline). "Ashland" and "Valvoline" are used interchangeably herein.

9.    Serving more than 100 countries around the globe, Valvoline is a leading marketer, distributor and producer of quality branded automotive and industrial products and services.   Products sold by Valvoline include automotive lubricants including motor oils; transmission fluids; gear oils; hydraulic lubricants; automotive chemicals; specialty products; greases; and cooling system products.   The Valvoline® brand of motor oil is world famous, enjoys a reputation for high quality, and is registered throughout the world.   Examples of registered trademarks in the United States are shown in Exhibit 1 and are licensed in the U.S. to Ashland by Ashland Licensing and Intellectual Property LLC ("ALIP").   In fact, as shown in Exhibits 2-4 attached, the Valvoline® trademark was one of the featured trademarks in a recent United States Patent and Trademark Office National Trademark Expo, as a famous United States trademark.   Valvoline spends millions of dollars annually in the United States advertising Valvoline® motor oils.

10.    Of particular relevance to this matter are the following United States trademarks:

| Registration No. | Goods and Services | First Use Date |
|---|---|---|
| 53,237 | Lubricating-oils. | July 1873 |
| 56,816 | Lubricating-oils | July 1873 |
| 1,059,021 | Oil, air and fuel filters for use on engines, motors or machines. | February 1, 1976 |
| 3,512,482 | Vehicle preventive maintenance services, namely, lubricating chassis; changing motor oil; changing oil and air filters; measuring for proper fluid levels and refilling transmission, differential, brake, power steering, radiator, windshield washer and battery reservoirs to the proper levels; changing windshield wiper blades; and inflating tires to proper pressure. | October 16, 1987 |

Copies are attached as Exhibits 5-8 and will be referred to as the "Trademarks."

11.    Valvoline® motor oil and related products and/or services are offered for sale to authorized entities including the facilities operating under the Valvoline® "Express Care"

program.  Express Care® is a registered trademark (Reg. No. 2,807,934") also licensed by ALIP to Ashland.  There are 350 Express Care® centers in the United States, including one in the Centralia, Illinois area.  The Express Care centers provide various services to their customers, including providing oil and filter changes using Valvoline® brand oil.  Other automotive service facilities within this district are also authorized to provide oil change services using Valvoline® brand oil.

12.    Valvoline advertises the Valvoline® products and the Express Care® program within this district and elsewhere throughout the United States.

## DEFENDANTS' ACTS OF INFRINGEMENT AND UNFAIR COMPETITION

13.    Customers at Defendants' instant oil change facility requesting Valvoline® brand oil have been told by Defendants that Valvoline® brand oil has been used for the customers' oil change when in fact some other brand of oil (hereinafter "counterfeit oil") has been used.

14.    Valvoline has twice analyzed oil sold by Defendants to a customer as Valvoline® brand oil and each time it was determined that the oil was a counterfeit oil.  The analytical procedures used are based on industry wide accepted tests.  On information and belief, Defendants have also sold to customers Valvoline® oil filters that were in fact not Valvoline® brand oil filters.

15.    After the analysis referenced in paragraph 13, Defendants were sent a cease and desist letter on May 4, 2012 by U.S. Overnight Express Mail, demanding that they cease and desist from offering counterfeit oil as Valvoline® and offering counterfeit oil filters as Valvoline® brand oil filters.  This letter was accepted, but no reply was received by Ashland.  A second cease and desist letter was subsequently sent and the letter was refused by Defendants.  A

third cease and desist letter was sent on September 26, 2012, and Defendants responded with a denial of the charges.

16.     After the May 4, 2012 cease and desist letter referred to in paragraph 15 was sent, another analysis of a sample of Defendants' oil was taken from a customer's vehicle.   The customer had specifically requested Valvoline® brand oil.  The analysis conducted by Valvoline shows that the oil used was counterfeit oil and not Valvoline® brand oil.   In an attempt to demonstrate the counterfeiting to Defendants, a chemical analysis and private investigator's report were submitted to Defendants' counsel.  The chemical analysis showed the absence of a required amount of a key component in the additive package included in the base oil to improve certain properties of that base oil.  Efforts by Valvoline to amicably resolve the matter have failed and it is now required to bring this action to protect its Valvoline® Trademarks.

## FIRST CLAIM FOR RELIEF

### (Infringement of and Counterfeiting of Plaintiff's Registered Valvoline® Trademarks in Violation of Section 32(1) (Counterfeiting) of the Lanham Act, 15 U.S.C. §1114(1))

17.     Plaintiff repeats and realleges the preceding paragraphs as though set forth fully herein.

18.     Defendants have used the aforesaid registered Valvoline® Trademarks without Plaintiff's permission or authority and have intentionally misrepresented that they use Valvoline® brand oil when in fact some other oil is used.

19.     Defendants' counterfeiting activities lead to and result in consumer confusion, mistake and deception, and cause consumers to believe that Valvoline is the source of the oil and filters they receive, or that Valvoline has authorized, licensed or is otherwise connected with Defendants' instant oil change facility, and/or cause consumers to mistakenly believe that the

counterfeit brand of oil that Defendants illegally offer is Valvoline® oil, all to Valvoline's detriment.

20.    Defendants' actions are deliberate and intended to confuse the public as to the affiliation of Defendants' instant oil change facility and the oil that it uses, and to injure Valvoline and reap the benefit of Valvoline's goodwill associated with the aforesaid federally registered Valvoline® Trademarks.

21.    Defendants' actions, including trademark counterfeiting, violate Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).  Defendant Rick Miller has knowingly participated in and/or authorized such counterfeiting.

22.    As a direct and proximate result of Defendants' willful conduct, Valvoline has sustained and will continue to sustain substantial damages.

23.    Furthermore, as a result of Defendants' conduct described above, Valvoline has sustained and will sustain irreparable injury for which no adequate remedy at law exists.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

A)    A permanent injunction prohibiting and enjoining Defendants, their officers, directors, agents, employees, subsidiaries, affiliates, assigns, licensees and anyone acting in concert with them, from:

1)    From offering for sale any Valvoline® product or service;

2)    Offering for sale or using the Valvoline® Trademarks in any manner including on counterfeit oil products;

3)    Otherwise infringing Plaintiff's Valvoline® Trademarks;

4)    Otherwise diluting Plaintiff's Valvoline® Trademarks; and

5)    Otherwise unfairly competing with Plaintiff.

B)    Awarding to Ashland all profits and gains from Defendants' wrongful use of Plaintiff's Trademarks;

C)    Awarding to Ashland treble damages, costs, disbursements, and attorney's fees damages pursuant to 15 U.S.C. §11117;

D)    Awarding to Ashland statutory damages for the willful use of a counterfeit trademark, pursuant to 35 U.S.C. §1117, in an amount not to exceed $2,000,000.00;

E)    Awarding to Ashland compensatory and punitive damages;

F)    Ordering Defendants to notify all customers who have purchased counterfeit oil within the last two years that the oil they purchased was counterfeit oil; and

G)    Awarding to Ashland such other relief, damages and costs as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (False Designation of Origin of Defendants' Goods and Services in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a))

24.    Plaintiff repeats and realleges the preceding paragraphs as though set forth fully herein.

25.    Plaintiff's trademark Valvoline®, as protected by the Trademarks, is inherently distinctive when used in connection with motor oil and lubrication services by virtue of the substantially exclusive and extensive use by Plaintiff of the trademark in commerce and in this state.

26.    Defendants' continued illegal use of the Trademarks constitutes a false designation of origin and a false representation that the oil is sponsored, authorized, affiliated, licensed and/or franchised by or are otherwise connected or affiliated with Plaintiff, or comes

from the same source as Plaintiff's oil and is of the same quality as that assured by the Trademarks.

27.    Defendants' use of the Trademarks is without Valvoline's permission or authority.

28.    Defendants' acts are deliberate and are intended to confuse consumers and the public as to the source and affiliation of Defendants' counterfeit oil and to reap the benefit of Plaintiff's goodwill associated with the trademark.    Defendant Rick Miller has knowingly participated in such counterfeiting.

29.    Defendants' acts violate Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

30.    As a direct and proximate result of Defendants' willful conduct, Plaintiff has sustained and will continue to sustain substantial damages.

31.    Furthermore, as a result of Defendants' conduct described above, Plaintiff has sustained and will continue to sustain irreparable injury for which there is no adequate remedy at law.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

A)    A permanent injunction prohibiting and enjoining Defendants, their officers, directors, agents, employees, subsidiaries, affiliates, assigns, licensees and anyone acting in concert with them, from:

    1)    From offering for sale any Valvoline® product or service;

    2)    Offering for sale or using the Valvoline® Trademarks in any manner including on counterfeit oil products;

    3)    Otherwise infringing Plaintiff's Valvoline® Trademarks;

    4)    Otherwise diluting Plaintiff's Valvoline® Trademarks; and

     5)     Otherwise unfairly competing with Plaintiff.

    B)     Awarding to Ashland all profits and gains from Defendants' wrongful use of Plaintiff's Trademarks;

    C)     Awarding to Ashland treble damages, costs, disbursements, and attorney's fees damages pursuant to 15 U.S.C. §11117;

    D)     Awarding to Ashland statutory damages for the willful use of a counterfeit trademark, pursuant to 35 U.S.C. §1117, in an amount not to exceed $2,000,000.00;

    E)     Awarding to Ashland compensatory and punitive damages;

    F)     Ordering Defendants to notify all customers who have purchased counterfeit oil within the last two years that the oil they purchased was counterfeit oil; and

    G)     Awarding to Ashland such other relief, damages and costs as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF

**(Dilution of Plaintiffs' Trademark in Violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), and the Illinois Anti-Dilution Act (§765 ILSC 1036 et seq.))**

32.    Plaintiff repeats and realleges the preceding paragraphs as though set forth fully herein.

33.    Plaintiff's Valvoline® Trademarks are famous within the meaning of the Lanham Act Section 43(c), 15 U.S.C. § 1125(c) and the Illinois Anti-Dilution Act.

34.    Defendants' acts described above have diluted and continue to dilute the distinctiveness of Plaintiff's unique and inherently distinctive Trademarks.

35.    Defendants' actions violate Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), and the Illinois Anti-Dilution Act (765 ILCS 1036/1) and have injured and will continue to injure Plaintiff unless restrained, thereby causing damage to Plaintiff in an amount to be determined at

trial, as well as irreparable injury to Plaintiff's goodwill and reputation associated with the value of the aforesaid Trademarks.

36.    Defendants have acted knowingly and deliberately with the intent to dilute the Trademarks. Defendant Rick Miller has knowingly participated in such counterfeiting.

37.    Defendants' conduct is willful, wanton and egregious.

38.    Plaintiff has no adequate remedy at law.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

A)    A permanent injunction prohibiting and enjoining Defendants, their officers, directors, agents, employees, subsidiaries, affiliates, assigns, licensees and anyone acting in concert with them, from:

1)    From offering for sale any Valvoline® product or service;

2)    Offering for sale or using the Valvoline® Trademarks in any manner including on counterfeit oil products;

3)    Otherwise infringing Plaintiff's Valvoline® Trademarks;

4)    Otherwise diluting Plaintiff's Valvoline® Trademarks; and

5)    Otherwise unfairly competing with Plaintiff.

B)    Awarding to Ashland all profits and gains from Defendants' wrongful use of Plaintiff's Trademarks;

C)    Awarding to Ashland treble damages, costs, disbursements, and attorney's fees damages pursuant to 15 U.S.C. §11117;

D)    Awarding to Ashland statutory damages for the willful use of a counterfeit trademark, pursuant to 35 U.S.C. §1117, in an amount not to exceed $2,000,000.00;

E)    Awarding to Ashland compensatory and punitive damages;

F)      Ordering Defendants to notify all customers who have purchased counterfeit oil within the last two years that the oil they purchased was counterfeit oil; and

G)      Awarding to Ashland such other relief, damages and costs as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

### (Common Law Unfair Competition and Unjust Enrichment)

39.     Plaintiff repeats and realleges the preceding paragraphs as though set forth fully herein.

40.     Plaintiff owns and enjoys common law trademark rights in the Trademarks set forth above throughout the United States and in the State of Illinois based on the prior and extensive use of the Trademarks in commerce and in this state.

41.     Plaintiff's rights in the Trademarks are superior to any rights Defendants may claim in and to the Trademarks for any purpose, especially the commercial exploitation of the Trademarks in connection with motor oil.

42.     Defendants' unlawful act in appropriating rights in Plaintiff's common law Valvoline® Trademarks was intended to capitalize on Plaintiff's goodwill for Defendants' own pecuniary gain.

43.     Defendants' unlawful misuse of Plaintiff's Valvoline® Trademarks causes counterfeit oil to be passed off as and confused with Plaintiff's Valvoline® oil, all to the detriment of Plaintiff, the public, and Defendants' customers.

44.     Defendant has continued after notice from Plaintiff, to use Plaintiff's Valvoline® Trademarks for the purpose of deceiving the public in order to induce the public to patronize

Defendants' instant oil change facility and to believe the oil that is offered is genuine Valvoline® oil. Defendant Rick Miller has knowingly participated in and authorized such counterfeiting.

45.    Defendants' actions are willful, wanton and egregious.

46.    Plaintiff and/or their predecessors-in-interest have expended substantial time, resources and effort to create and maintain the extensive goodwill enjoyed by its Valvoline® Trademarks.

47.    As a result of Plaintiff's efforts, Defendants are unjustly enriched and benefit from property rights which rightfully belong to Plaintiff, and the public is being deceived by Defendants.

48.    Defendants' acts constitute unfair competition and unjust enrichment under Illinois common law.

49.    As a direct and proximate result of Defendants' willful conduct, Plaintiff has sustained and will continue to sustain substantial damages.

50.    Further, as a result of Defendants' conduct described above, Plaintiff has sustained and will sustain irreparable injury for which there is no adequate remedy at law.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

A)    A permanent injunction prohibiting and enjoining Defendants, their officers, directors, agents, employees, subsidiaries, affiliates, assigns, licensees and anyone acting in concert with them, from:

1)    From offering for sale any Valvoline® product or service;

2)    Offering for sale or using the Valvoline® Trademarks in any manner including on counterfeit oil products;

3)    Otherwise infringing Plaintiff's Valvoline® Trademarks;

    4)      Otherwise diluting Plaintiff's Valvoline® Trademarks; and

    5)      Otherwise unfairly competing with Plaintiff.

B)     Awarding to Ashland all profits and gains from Defendants' wrongful use of Plaintiff's Trademarks;

C)     Awarding to Ashland treble damages, costs, disbursements, and attorney's fees damages pursuant to 15 U.S.C. §11117;

D)     Awarding to Ashland statutory damages for the willful use of a counterfeit trademark, pursuant to 35 U.S.C. §1117, in an amount not to exceed $2,000,000.00;

E)     Awarding to Ashland compensatory and punitive damages;

F)     Ordering Defendants to notify all customers who have purchased counterfeit oil within the last two years that the oil they purchased was counterfeit oil; and

G)     Awarding to Ashland such other relief, damages and costs as the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

### (Trademark Infringement in Violation of the Illinois Deceptive Trade Practices Act §3815 ILCS 510 et seq.)

51.    Plaintiff repeats and realleges the preceding paragraphs as though set forth fully herein.

52.    Defendants' sale of counterfeit oil using Plaintiff's Valvoline® Trademarks is likely to injure Plaintiff's business reputation and dilute the distinctive quality of Plaintiff's Trademarks. Defendant Rick Miller has knowingly participated in such counterfeiting.

53.    Plaintiff's federally registered Valvoline® Trademarks are distinctive trademarks in which Plaintiff has developed substantial goodwill and a unique product identity.

54.     As a result of the foregoing, Plaintiff has sustained and will continue to sustain substantial damages.

55.     Further, as a result of Defendants' conduct described above, Plaintiff has sustained and will continue to sustain irreparable injury for which there is no adequate remedy at law.

56.     Defendants' actions violate the Illinois Deceptive Practices Act, 3815 ILCS §510/2.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

A)      A permanent injunction prohibiting and enjoining Defendants, their officers, directors, agents, employees, subsidiaries, affiliates, assigns, licensees and anyone acting in concert with them, from:

    1)      From offering for sale any Valvoline® product or service;

    2)      Offering for sale or using the Valvoline® Trademarks in any manner including on counterfeit oil products;

    3)      Otherwise infringing Plaintiff's Valvoline® Trademarks;

    4)      Otherwise diluting Plaintiff's Valvoline® Trademarks; and

    5)      Otherwise unfairly competing with Plaintiff.

B)      Awarding to Ashland all profits and gains from Defendants' wrongful use of Plaintiff's Trademarks;

C)      Awarding to Ashland treble damages, costs, disbursements, and attorney's fees damages pursuant to 15 U.S.C. §11117;

D)      Awarding to Ashland statutory damages for the willful use of a counterfeit trademark, pursuant to 35 U.S.C. §1117, in an amount not to exceed $2,000,000.00;

E)    Awarding to Ashland compensatory and punitive damages;

F)    Ordering Defendants to notify all customers who have purchased counterfeit oil within the last two years that the oil they purchased was counterfeit oil; and

G)    Awarding to Ashland such other relief, damages and costs as the Court deems just and proper.

DATED: 01.29.2013

Respectfully submitted,
KORTENHOF MCGLYNN & BURNS LLC

By: _____

Maureen A. McGlynn
1015 Locust Street, Suite 710
Saint Louis, MO  63101
Telephone: (314) 727-1000
Facsimile: (314) 727-2960
Email: mo@kmblaw1.com

*Attorney for Plaintiff*
*ASHLAND INC.*

Of counsel:

Bruce Tittel of Counsel (Ohio Bar #0032729)
Paul Linden (Ohio Bar #0083699)
WOOD, HERRON & EVANS, L.L.P.
441 Vine Street
2700 Carew Tower
Cincinnati, Ohio 45202
513/241-2324
513/421-7269 (fax)
email:  btittel@whe-patent.com
email:  plinden@whe-patent.com